## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |
|---|---|
| RONALD McCLOUD, | CASE NO. 5:24-cv-01523 |
| Petitioner, | DISTRICT JUDGE JOHN R. ADAMS |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| WARDEN DOUG LUNEKE, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

Petitioner Ronald McCloud ("Petitioner" or "Mr. McCloud") brings this habeas corpus petition pursuant to 28 U.S.C. § 2254 based on his convictions for receiving stolen property, tampering with evidence, aggravated murder, and felony murder in Lorain County Court of Common Pleas, Case No. 05CR068067.  (ECF Doc. 1.)  He filed his Petition pro se on July 18, 2024.[1]  (*Id.*)  On August 1, 2024, he filed an amended Petition.  (ECF Doc. 4 ("Petition").)  The matter was referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

On February 11, 2025, Respondent filed a Motion to Dismiss the Petition as untimely. (ECF Doc. 18.)  On March 3, 2025, Mr. McCloud filed a Motion for Summary Judgment, alleging that Respondent failed to timely file a Return of Writ.  (ECF Doc. 19.)  Respondent filed a memorandum in opposition on March 14, 2025.  (ECF Doc. 20.)  On April 4, 2025, Petitioner filed a Motion to Stay Proceedings and response to the Motion to Dismiss.  (ECF Doc. 21.) Respondent filed a reply and a response to the Motion to Stay on April 16, 2025.  (ECF Doc. 24.)

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts." *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266, 273 (1988)).  Mr. McCloud's Petition was docketed on July 29, 2024 (ECF Doc. 1) and placed in the prison mailing system on July 18, 2024 (*id*. at p. 15).

For the reasons set forth herein, the undersigned recommends that the Court **DENY** Petitioner's Motions for Summary Judgment and for a Stay, **GRANT** Respondent's Motion to Dismiss, and **DISMISS** the Petition as untimely.

## I.  Factual Background

"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See id.*; *Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008).

The Eighth District Ohio Court of Appeals summarized the facts underlying Mr. McCloud's conviction as follows:

{¶ 2} Janet Barnard was last seen alive on the afternoon of June 4, 2005. At that time, Barnard asked her friend if she could borrow hedge trimmers so that she could trim the hedges at her church, Living Water Christian Fellowship. Barnard was actively involved in her church and had been helping to prepare the grounds for the arrival of a special guest speaker. Witnesses saw Barnard's car in the church parking lot that day and also saw Barnard trimming bushes while it was still daylight outside.

{¶ 3} At approximately 9:00 a.m. the following morning, Pastor Terry Grapenthin arrived at the church to prepare for the ten o'clock service. Pastor Grapenthin observed hedge trimmers lying on the grass outside the church as well as trimmings and an extension cord. The front door of the church was also unlocked. When Pastor Grapenthin entered the church, he noticed several other oddities. Specifically, there was a sandal in the hallway and both the fire extinguisher and an electrical box that had been bolted to the wall lay on the floor. Pastor Grapenthin picked up all of the items he observed and proceeded down the hallway to empty the garbage from the restrooms. He then opened the door to the men's room and saw a body on the floor. Pastor Grapenthin immediately left the church and called the police.

{¶ 4} The police soon identified the body as that of Janet Barnard. Barnard had been brutally beaten and left on the bathroom floor with her head resting on a trash can and her legs splayed open. The trash can itself was damaged, with multiple breaks in it, and the toilet in the bathroom had been broken off its bolts. There were extensive injuries on her face, scratches, bruises, and abrasions all over her body,

and visible bleeding from her vaginal area. Her dress and bra had been torn, her eyeglasses and underwear were missing, and the cross from her neck lay broken on the bathroom floor. Although Barnard's car had been spotted in the church parking lot the night before, it was gone by the time her body was discovered.

{¶ 5} The police canvassed the area and quickly identified McCloud as a suspect after they learned that he had befriended Barnard and had been seen with her around the church within days of the murder. The police were unable to apprehend McCloud at his home when they went there, but found Barnard's car parked in the driveway next door and her purse in one of the bedrooms. Based upon a tip, the police later went to McCloud's sister's apartment in Cleveland. McCloud jumped from the second-story apartment's balcony and fled when the police arrived. Although officers gave chase, McCloud evaded them.

{¶ 6} McCloud turned himself in on June 7, 2005. The police photographed him at that time to document scratches he had on his upper arms, shoulders, back, legs, and knees. They also obtained his DNA. Later testing confirmed that McCloud could not be excluded as the source of the DNA found on Barnard's dress, nipples, and fingernail scrapings.

*State v. McCloud*, 2012-Ohio-5220, ¶¶ 2-6, 2012 WL 5493375, at *1 (Ohio Ct. App. Nov. 13, 2012), (ECF Doc. 18-1, pp. 208-09).

## II.    Procedural History

### A.    State Court Conviction

On June 16, 2005, the Lorain County Grand Jury issued an indictment charging Mr. McCloud with receiving stolen property (O.R.C.§ 2913.51(A)) (Count 1) and tampering with evidence (O.R.C. § 2921.12(A)(1)) (Count 2).  (*See* ECF Doc. 18, p. 4.)[2]  Mr. McCloud was arraigned on this indictment and pled not guilty on June 22, 2005.  (ECF Doc. 18-1, p. 7.)

On July 14, 2005, the Lorain County Grand Jury issued a supplemental indictment that additionally charged Mr. McCloud with: two separate counts of aggravated murder with sexual motivation, capital murder, and repeat violent offender specifications (O.R.C. §§ 2903.01(A), (B)) (Counts 3 and 4); one count of murder with sexual motivation and repeat violent offender

---

[2] Respondent informed the Court that he was not able to obtain a copy of this indictment.  (ECF Doc. 18, p. 5, n. 4.)

specifications (O.R.C. § 2903.02(A)) (Count 5); one count of felony murder with sexual motivation and repeat violent offender specifications (O.R.C. § 2903.02(B)) (Count 6); one count of felonious assault with sexual motivation and repeat violent offender specifications (O.R.C. § 2903.11(A)(1)) (Count 7); two separate counts of kidnapping with sexual motivation and repeat violent offender specifications (O.R.C. §§ 2905.01(A)(3), (4)) (Counts 8 and 9); one count of rape with a repeat violent offender specification (O.R.C. § 2907.02(A)(2)) (Count 10); and one count of aggravated robbery with a repeat violent offender specification (O.R.C. § 2911.01(A)(3) (Count 11). (ECF Doc. 18-1, p. 8.) Mr. McCloud was arraigned and pled not guilty to the supplemental indictment on July 20, 2005. (*Id*. at p. 15.)

On August 11, 2005, the Lorain County Grand Jury issued a second supplemental indictment adding a charge for one count of aggravated robbery with a repeat violent offender specification (O.R.C. § 2911.01(A)(3)) (Count 12). (ECF Doc. 18-1, p. 16.) Mr. McCloud was arraigned and pled not guilty on August 12, 2005. (*Id*. at p. 24.)

After his third arraignment, Mr. McCloud, filed a plea of not guilty by reason of insanity on August 15, 2005. (*Id*. at 18.) The trial court referred him to the Lorain County Forensic Center for an evaluation of competence to stand trial and sanity at the time of the offense. (*Id*. at 26.) After multiple competency and sanity evaluations and a competency hearing, the trial court found Mr. McCloud competent to stand trial on October 5, 2006. (*Id*. at p. 70.)

On June 27, 2008, the Lorain County Grand Jury issued a third supplemental indictment charging Mr. McCloud with: two additional counts of kidnapping with sexual motivation and repeat violent offender specifications (O.R.C. §§ 2905.01(A)(3), (4)) (Counts 13, and 14); one count of aggravated robbery with a repeat violent offender specification (O.R.C. § 2911.01(A)(3)) (Count 15); and one count of felony murder with sexual motivation and repeat

violent offender specifications (O.R.C. § 2903.02(B)) (Count 16).  (ECF Doc. 18-1, pp. 71-73.)

Mr. McCloud was arraigned and pled not guilty to the third supplemental indictment on July 3,

2008.  (*Id*. at p. 74.)

On October 8, 2009, Mr. McCloud waived his right to a trial by jury and elected to be

tried by a three-judge panel.  (*Id*. at p. 89.)  At a status conference on December 1, 2010, Mr.

McCloud withdrew his plea of insanity.  (*Id*. at p. 116.)  The case proceeded to trial and on

December 10, 2010, the three-judge panel found Mr. McCloud guilty on Counts 1-5, 7, 10, and

16 with all specifications and not guilty on Counts 13 and 14.  (*Id*. at pp. 119-21.)

At his sentencing on January 25, 2011, Counts 6, 8, 9, 11, 12, and 15 were dismissed.

(*Id*. at p. 125.)  The court sentenced Mr. McCloud to: 18 months on Count 1; 5 years on Count 2;

10 years on Count 10; and life without the possibility of parole on Count 4, considering Counts

3, 5, 7, and 16 allied offenses with Count 4.  (*Id*.)

## B.    Direct Appeal

On February 23, 2011, Mr. McCloud, through newly appointed counsel, filed a timely

notice of appeal to the Ninth District Court of Appeals in Lorain County, Ohio.  (ECF Doc. 18-1,

p. 152.)  In his appellate brief, Mr. McCloud raised the following assignments of error:

1. THE VERDICTS ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE
   IN VIOLATION OF MR. McCLOUD'S RIGHTS UNDER THE FIFTH AND
   FOURTEENTH AMENDMENTS TO THE UNITED STATES
   CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO STATE
   CONSTITUTION.

2. THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE
   EVIDENCE IN VIOLATION OF MR. McCLOUD'S RIGHTS UNDER THE
   FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
   CONSTITUTION, AND ARTICLE I, SECTION 16 OF THE OHIO STATE
   CONSTITUTION

3. MR. McCLOUD WAS DEPRIVED OF A FAIR TRIAL IN VIOLATION OF
   HIS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS

TO THE UNITED STATES CONSTITUTION, AND ARTICLE ONE, SECTION 16 OF THE OHIO STATE CONSTITUTION

(*Id*. at p. 158.)  The State filed its brief in opposition on July 25, 2012.  (*Id*. at pp. 179-207.)  On November 16, 2012, the Court of Appeals overruled all three assignments of error and affirmed the trial court's judgment.  (*Id*. at pp. 208-23.)  Mr. McCloud did not appeal this decision to the Ohio Supreme Court.

**C.  Delayed App. R. 26(B) Application to Reopen Appeal**

On July 10, 2018, Mr. McCloud filed a pro se Application to Reopen his Appeal under Ohio App. R. 26(B) ("Rule 26(B) Application") with the Ninth District Court of Appeals, alleging ineffective assistance of appellate counsel.  (ECF Doc. 18-1, pp. 224-29.)  The Ninth District denied the Rule 26(B) Application as untimely by over five years, finding that Petitioner had not shown good cause for the late filing.  (*Id*. at p. 241.)  Mr. McCloud did not appeal this decision to the Supreme Court of Ohio.

**D.  Second Delayed App. R. 26(B) Application to Reopen Appeal**

On March 14, 2022, Mr. McCloud filed a second Rule 26(B) Application with the Ninth District Court of Appeals, claiming he was never informed of the disposition of his first such motion and repeating arguments that his appellate counsel was ineffective.  (ECF Doc. 18-1, pp. 243-58.)  On May 28, 2022, the Ninth District denied the application as a successive application to reopen, which is not permitted under Rule 26(B) or relevant case law.  (*Id*. at pp. 266-67.)  Mr. McCloud did not appeal this decision to the Ohio Supreme Court.

On August 16 and September 27, 2022, Mr. McCloud moved to reconsider the Ninth District's decision on his second Rule 26(B) Application.[3]  (*Id*. at pp. 274, 345.)  The Ninth District denied the motions as untimely on November 30, 2022.  (*Id.* at p. 345; ECF Doc. 23.)

## E.      Post-Conviction Motion to Compel

On May 16, 2022, Mr. McCloud filed a Motion to Compel the Preservation and Listing of Evidence in the trial court ("Motion to Compel").  (ECF Doc. 18-1, pp. 268-69.)  He requested a listing of all evidence used at trial, which he planned to have tested by an independent DNA expert.  (*Id*. at p. 268.)  The trial court denied the motion as moot on May 19, 2022, stating that O.R.C. § 2933.82(B)(1)(c) required all biological evidence related to his case to be retained until his death or release from prison, since he was serving a life sentence.  (*Id*. at p. 270.)

Mr. McCloud filed a timely notice of appeal in the Ninth District Court of Appeals on June 15, 2022.  (*Id*. at p. 271-73.)  On October 5, 2022, the Ninth District dismissed the appeal because Mr. McCloud did not file a brief.  (*Id*. at p. 284.)  Mr. McCloud filed a motion to reconsider on November 15, 2022 (*id*. at p. 285), which the Ninth District denied on May 15, 2023 (*id*. at p. 288).

On June 26, 2023, Mr. McCloud filed a notice of appeal with the Supreme Court of Ohio (*id*. at p. 289) and a memorandum in support of jurisdiction (*id*. at pp. 292-308).  In his memorandum, he raised three propositions of law that related to his trial and direct appeal and were unrelated to the denial of his motion to compel.  (*Id*.)  On August 15, 2023, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  (*Id*. at p. 309.)

---

[3] The August 16, 2022 motion to reconsider was originally docketed in separate proceedings relating to a Motion to Compel Preservation of Evidence proceedings.  (ECF Doc. 18-1, pp. 274, 346 (showing the 8-16-2022 motion filed in 22CA011873, the docket for the Motion to Compel proceedings).)  A magistrate later noted this as an error and ordered the clerk of courts to file the motion to reconsider in the correct case, 11CA009966, which contained Petitioner's direct appeal and subsequent applications to reopen that appeal.  (*See id*. at pp. 281, 342-45.)  The record does not contain a copy of the September 2022 motion to reconsider, but it appears on the docket for Case No. 11CA009966.  (*Id*. at p. 345.)

### III.    Federal Habeas Corpus Petition

Mr. McCloud raises three grounds for relief in his Petition:

**Ground One:** Prosecutor misconduct.

**Supporting Facts:** The prosecutor knowingly presented the false testimony of states DNA expert (Stacey Violi) resenting false DNA evidence. Presenting false items and impressions of the crime scene to the trial court violation of due process 14th Amendment, violation of petitioner's right to a fair trial and violation of 5th Amendment, 6th Amendment right.

**Ground Two:** Ineffective assistance of appeal and trial attorneys violation of 6th Amendment.

**Supporting Facts:** (1) failure to hire independent DNA expert, (2) failure to investigate and failure to hire an investigator, failure to challenge the state's theory of the case, failure to properly cross exam the state's DNA expert, failure to object to false evidence, failure to cross examine. Failure to call to the witness stand petitioners mother (confrontation rights).

**Ground Three:** Abuse of discretion.

**Supporting Facts:** Trial judge allowed hearsay testimony of Roberta Crapenthin abuse of discretion for allowing the states DNA expert to testify without conducting duties under Fed. R. 702 gate keeping function, (allowing D.T. Carpentiere to testify instead of petitioner's mother as to a person belonging to decedent).

(ECF Doc. 4, pp. 5, 7-8.)

### IV.    Petitioner's Motion to Stay

Mr. McCloud seeks a stay of the current proceedings, asserting that a stay will allow him to return to state court to present "newly discovered evidence" proving he is "actually innocent." (ECF Doc. 21, pp. 1, 7.)   In response, Respondent asserts first that a stay is not appropriate under *Rhines v. Weber*, 544 U.S. 269 (2005), because Mr. McCloud "does not present a mixed petition that can be stayed." (ECF Doc. 24, p. 3.)  Even if Mr. McCloud did present a "mixed petition," Respondent argues that Mr. McCloud has not met the requirements for a stay under *Rhines* because he did not identify newly discovered evidence or show "good cause" for his

delay in exhausting any relevant claims in state court, and because any return to state court would be futile due to those claims being time-barred.  (ECF Doc. 24, pp. 3-6.)

A state prisoner with federal constitutional claims must fairly present them in state court before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  Even where a habeas petitioner presents a "mixed petition" containing both exhausted and unexhausted claims, comity requires that state courts be given the first opportunity to review the unexhausted claims.  *See Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).  If a mixed petition is dismissed while a petitioner pursues unexhausted claims in state court, however, there is a concern that any exhausted claims will become time-barred under the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA").

That is why the Supreme Court clarified in *Rhines*, that a district court with a "mixed petition" may stay the case and permit the petitioner to present his unexhausted claims to the state court before the federal court undertakes review of the petition.  *See* 544 U.S. at 277.  A "stay and abeyance" is available where the district court determines that: (1) there was good cause for the petitioner's failure to exhaust the relevant claims first in state court; (2) the unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay.  *Id.*

As an initial matter, the undersigned agrees with Respondent that a stay under *Rhines* is not appropriate here because Mr. McCloud has not identified any unexhausted federal habeas claims that he now seeks to exhaust in state court.  Although he generally alleges that a stay is warranted so he can present "newly discovered evidence" in state court to prove he is "actually innocent" (ECF Doc. 21, p. 7), he does not identify what, if any, evidence has been "newly

discovered" and does not specify what, if any, unexhausted claims such evidence would allow him to add to the Petition.[4]  As Respondent observes, Mr. McCloud's arguments focus on testimony given at his 2010 trial, not on newly-discovered evidence.  (ECF Doc. 24, pp. 3-4 (citing ECF Doc. 21, p. 7).)  Since he has failed to identify any unexhausted claims, he has failed to show that his case involves a "mixed petition" subject to a stay and abeyance under *Rhines*.

Further, even if this case did involve a "mixed petition," it is evident that Mr. McCloud has not met the requirements to support a stay under *Rhines*.  As to the first *Rhines* factor, Mr. McCloud has not shown "good cause" for his failure to timely exhaust any additional federal habeas claims.  The state court overruled his arguments on direct appeal in 2012 (ECF Doc. 18-1, pp. 208-23), denied his 2018 application to reopen his appeal, noting that it was untimely by over five years (*id.* at p. 241), denied his 2022 application to reopen his appeal, noting that successive applications are not permitted (*id.* at pp. 266-67) and denied his 2022 motions to reconsider that denial (ECF Doc. 23, pp. 3-4).  He filed his original and amended Petitions in July and August of 2024 (ECF Docs. 1, 4) but did not inform the Court of any "newly discovered evidence" until April 2025 (ECF Doc. 21).  When he did mention "new" evidence, he did not describe or otherwise identify that evidence, did not explain how or when he discovered the evidence, did not explain the reasons for his delay in timely exhausting state court remedies relating to the evidence, and did not specify what, if any, steps he is now taking to exhaust those

---

[4] To the extent Mr. McCloud seeks to add a federal constitutional claim of "actual innocence" to his Petition, the Sixth Circuit notes that "the Supreme Court has not decided whether actual innocence is a substantive ground for relief," and that actual innocence arguments are typically used instead as "a 'gateway' by which a petitioner may belatedly file other constitutional and federally cognizable claims."  *Hubbard v. Rewerts*, 98 F.4th 736, 742-43 (6th Cir. 2024), cert. denied sub nom. *Hubbard v. Tanner*, 145 S. Ct. 1201, (2025) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 393 (2013)).  Alternately, if Mr. McCloud is arguing "actual innocence" only as a "gateway . . . to have his otherwise barred constitutional claim considered on the merits"—i.e., as a reason to toll the statute of limitations, *see Schlup v. Delo*, 513 U.S. 298, 316 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993))—there is no need for him to exhaust state court remedies, which makes a stay and abeyance under *Rhimes* unnecessary.  *See generally McQuiggin*, 569 U.S. at 395 (noting that AEDPA's bar on evidentiary hearings "includes an exception for prisoners who present new evidence of their innocence") (citing 28 U.S.C. §§ 2254(e)(2)(A)(ii), (B)).

remedies in state court.  (*Id.*)  The undersigned accordingly finds Mr. McCloud has not shown "good cause" for his failure to exhaust any habeas claims relating to new evidence, and that a stay and abeyance is accordingly not supported under *Rhines*.

As to the second *Rhines* factor, the undersigned also finds Mr. McCloud has failed to show that his unexhausted claims—if any exist—are not plainly meritless.  Of course, he has made any analysis of this factor largely impossible by failing to specify what, if any, federal habeas claims he would seek to assert if given the opportunity to exhaust his state remedies relating to the undisclosed "newly discovered evidence."  But the undersigned also finds based on the evidence presently before this Court, for the reasons outlined in Section VI.C., *infra*, that any claims Mr. McCloud might seek pursue are likely barred by the AEDPA statute of limitations.  Thus, for this additional reason, a stay and abeyance is not warranted under *Rhimes*.

For all of the reasons set forth above, the undersigned recommends that the Court **DENY** Petitioner's Motion to Stay.

## V.    Petitioner's Motion for Summary Judgment

In his Motion for Summary Judgment, Mr. McCloud asks the Court to "find Respondent in procedural default," alleging that Respondent has not filed a timely response to the Petition or filed the state court record or transcripts.  (ECF Doc. 19.)  Essentially, he argues that Respondent "waived" any challenges on the merits of the Petition by filing a Motion to Dismiss based on the statute of limitations rather than a Return of Writ.  (*Id*. at p. 2.)

As a factual matter, Mr. McCloud's motion lacks merit because the record reflects that Respondent did file a timely response to the Petition.  While the Court's initial briefing order directed Respondent to file an answer to the Petition within sixty days of November 14, 2024, it also contemplated the potential filing of a dispositive motion.  (ECF Doc. 11.)  Respondent

thereafter obtained an extension of time to February 13, 2025, to answer the Petition, and filed the present Motion to Dismiss on February 11.  (*See* ECF Doc. 15; Non-document order dated 1/7/25; ECF Docs. 18, 18-1.)  "A motion to dismiss filed in lieu of an answer is a permissible responsive pleading to a § 2254 petition and does not constitute a default."  *Kozic v. Sloan*, No. 4:17-CV-322, 2018 WL 295577, at *3 (N.D. Ohio Jan. 3, 2018) (collecting cases).  With the motion, Respondent also submitted a certified copy of the state court record and indicated that the trial transcripts, which Respondent asserts are not relevant to the present motion, are available upon request.  (ECF Doc. 18, p. 4, n. 3; ECF Doc. 18-1.)  This was sufficient to meet Respondent's obligations under the Court's briefing order and the Rules Governing § 2254 Cases.  *See* Rule 5(c), Rules Governing § 2254 Cases ("The answer must also indicate what transcripts . . . are available . . . . The respondent must attach to the answer parts of the transcript that the respondent considers relevant.").  Accordingly, the undersigned finds Respondent has complied with all relevant rules and orders in filing the pending Motion to Dismiss.

As a procedural matter, the undersigned also notes that this Court cannot grant judgment in favor of a habeas petitioner without deciding the case on its merits, since "the burden to show that he is in custody in violation of the Constitution of the United States is on the prisoner."  *See Brown v. United States*, No. 20-5090, 2020 WL 10054086, at *5 (6th Cir. Nov. 25, 2020); *see also Black v. Carpenter*, 866 F.3d 734, 743 (6th Cir. 2017) (finding "[s]ummary-judgment procedures simply d[id] not apply" to the adjudication of a habeas claim, since the petitioner "had the burden of proving, by a preponderance of the evidence, that he was entitled to relief") (citing *Parke v. Raley*, 506 U.S. 20, 34 (1992)); *Harris v. Warden, London Corr. Inst.*, No. 17-3944, 2018 WL 1224456, at *2 (6th Cir. Mar. 1, 2018) ("Default judgment is not generally available in habeas proceedings.") (citing *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970)).

For all of the reasons set forth above, the undersigned recommends that the Court **DENY** Petitioner's Motion for Summary Judgment.

## VI.     Respondent's Motion to Dismiss

### A.     Standard of Review Under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, PL 104–132, April 24, 1996, 110 Stat 1214, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Id.* (citing 28 U.S.C. §§ 2254(a), (b), (c).  If an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application "shall not be granted" unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).  The burden of proof rests with the petitioner.  *See Cullen*, 563 U.S. at 181.

**B.**     **AEDPA Statute of Limitations**

28 U.S.C. § 2244 limits the time within which a person in custody pursuant to the

judgment of a state court may file a petition for a federal writ of habeas corpus, providing in

relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation shall run from the latest of --
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).  AEDPA's statutory tolling provision provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thus, under section 2244(d)(2), the statute of limitations is tolled for as long as a

properly filed application for post-conviction relief or other collateral review is pending in the

state courts.  *See Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003).  This statutory tolling

continues "until the application has achieved final resolution through the State's post-conviction

procedures," *Carey v. Saffold*, 536 U.S. 214, 220 (2002), and further "until the expiration of the

period for further State court review, whether or not the petitioner actually seeks such review,"

*Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (internal quotations omitted).  The tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run."  *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).  Thus, once the limitations period has expired, a "collateral petition[] can no longer serve to avoid a statute of limitations."  *Id.*

In addition to statutory tolling, the AEDPA statute of limitations may be equitably tolled in appropriate circumstances.  The Supreme Court has explained that this defense "is not jurisdictional" and "does not set forth an inflexible rule requiring dismissal whenever its clock has run."  *Holland v. Fla.*, 560 U.S. 631, 649 (2010) (internal quotations omitted).  Equitable tolling allows federal courts to excuse the statute of limitations bar where tolling is appropriate to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules."  *Id.* at 650 (internal quotations omitted).  There are generally two forms of equitable tolling available, traditional equitable tolling and tolling based on "actual innocence."

To support traditional equitable tolling, a petitioner must show that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* at 649 (internal citations and quotations omitted); *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011).  Tolling is evaluated on a case-by-case basis and must be "applied sparingly," with the petitioner retaining the "ultimate burden of persuading the court that he or she is entitled to equitable tolling."  *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011) (internal quotations and citations omitted).  "[P]ro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse . . . late filing."  *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012); *see also Hall*, 662 F.3d at 750-52 (lack of transcript, pro se status and limited law library access did

15

not warrant equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding "lack of legal training, [a petitioner's] poor education, or even [a petitioner's] illiteracy" are not reasons to toll the statute of limitations).

The Supreme Court has also found that equitable tolling may apply where a petitioner "can credibly demonstrate actual innocence." *Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386); *see also Patterson v. Lafler*, 455 F. App'x 606, 609 (6th Cir. 2012) (explaining that a petitioner "may also be eligible for equitable tolling if he demonstrates actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice") (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).  Equitable tolling under this standard "requires the presentation of 'new reliable evidence'" not presented at trial, which may include "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Hubbard*, 98 F.4th at 743 (quoting *Schlup*, 513 U.S. at 324).

Although a petitioner must present "new reliable evidence" to meet this standard, courts are directed to look to the entire record to determine whether a credible claim of actual innocence has been made. *Id.* (citing *House v. Bell*, 547 U.S. 518, 537 (2006)).  "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)) (internal quotation marks omitted).  Thus, to be entitled to equitable tolling, a petitioner must do "more than only undermine the state's case." *Hubbard*, 98 F.4th at 748. Ultimately, the Supreme Court has underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 569 U.S. at 395 (brackets in original) (quoting *Schlup*, 513 U.S. at 329).

**C.      The Petition Should be Dismissed as Untimely**

Respondent contends that Mr. McCloud's Petition is not timely because it was not filed within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," *see* 28 U.S.C. § 2244(d)(1)(A), and Petitioner has not shown he is entitled to statutory or equitable tolling.  (ECF Doc. 18, pp. 9-14.)  Mr. McCloud argues that his Petition is in fact timely, that he is entitled to equitable tolling due to ineffective assistance of his appellate counsel, and that he has new evidence showing his actual innocence.  (*See* ECF Doc. 4, p. 13; ECF Doc. 21, pp. 2-3, 6-9.)

For the reasons explained below, the undersigned concludes that Mr. McCloud's Petition is untimely under § 2244(d)(1)(A) and he has not shown that he is entitled to tolling.

**1.      The Petition is Untimely Under § 2244(d)(1)(A)**

The undersigned first considers the timeliness of the Petition under §2244(d)(1)(A), which starts the running of AEDPA's statute of limitations from the date the judgment became final through the conclusion of direct review or the expiration of time for seeking such review. The Ninth District Court of Appeals affirmed Petitioner's conviction and sentence on November 16, 2012.  (ECF Doc. 18-1, pp. 208-23.)  Petitioner then had 45 days to file an appeal with the Supreme Court of Ohio.  *See* S.Ct.Prac.R. 6.01(A)(1).  His notice of appeal was therefore due on December 31, 2012.  Mr. McCloud did not file a notice of appeal by that date.  Therefore, the one-year statute of limitations under § 2244(d)(1)(A) started to run on January 1, 2013, and expired on January 1, 2014.  Mr. McCloud did not file his Petition until July 18, 2024, over ten years after the expiration of the statute of limitations.  (ECF Doc. 4, p. 15.)

Petitioner claims his Petition is timely.  (ECF Doc. 4, p. 13 (writing "N/A" where the Petition invites explanation for filing outside the one-year statute of limitations); ECF Doc. 21,

pp. 1-2.)  In response to the Motion to Dismiss, he asserts that his July 18, 2024 Petition is timely because: the Ninth District Court of Appeals reopened his direct appeal in August 2022 when it re-docketed a motion to reconsider that was incorrectly filed; he then filed an appeal with the Ohio Supreme Court; and that appeal was rejected on August 15, 2023.  (ECF Doc. 21, pp. 4-6.)  This argument is based on several misinterpretations of the procedural history.

First, the re-docketing of Mr. McCloud's "Motion to Reconsider App.(26)A" (hereinafter "Motion to Reconsider") in 2022 did not "reinstate" his direct appeal, which was decided by the court of appeals in 2012.  On August 16, 2022, Mr. McCloud filed the Motion to Reconsider with the state court of appeals, which was docketed under the case number for his recent appeal of the denial of his post-conviction Motion to Compel: Case No. 22CA011873.  (ECF Doc. 18-1, pp. 271, 274.)  On August 24, 2022, a magistrate noted that the court had not yet issued an order on Mr. McCloud's appeal regarding the Motion to Compel, making a motion for reconsideration inapplicable, and ordered the clerk of courts to file the Motion to Reconsider instead under the "prior appeal," in Case No. 11CA009966.  (*Id*. at p. 281; *see id.* at p. 345 (docket from 11CA009966).).  That docket included Petitioner's 2011 direct appeal and subsequent Rule 26(B) Applications in 2018 and 2022, making it the appropriate docket for his Motion to Reconsider.  (*Id*. at pp. 274-78.)  The court of appeals ultimately denied the Motion to Reconsider, affirming its denial of the second Rule 26(B) Application.  (*Id*. at p. 345; ECF Doc. 23.)[5]  The court's correction of a docketing error as described above did not serve to reinstate Petitioner's direct appeal; the action merely ensured that his Motion to Reconsider the denial of his second Rule 26(B) Application was docketed under the correct appellate case number.

---

[5] Petitioner asserts that there is no order denying his Motion to Reconsider as untimely, suggesting this means his application to reopen his appeal was granted, and he filed a "proper appeal."  (ECF Doc. 21, pp. 8-9.)  While a copy of the judgment entry disposing of the Motion to Reconsider was not initially included in the state court record, Respondent was able to obtain a copy and submitted it as a supplement to the state court record.  (ECF Doc. 23.)

18

Second, Mr. McCloud's June 2023 filing with the Supreme Court of Ohio was not a timely appeal of the appellate court's decision on his direct appeal. The state court of appeals denied Mr. McCloud's direct appeal in November 2012 (ECF Doc. 18-1, pp. 208-23), and Mr. McCloud did not appeal that decision to the Supreme Court of Ohio. He later sought to reopen his direct appeal under Ohio App. R. 26(B) (*id.* at pp. 224-29, 243-58), but those requests were denied as untimely or successive (*id.* at pp. 241-42, 266-67), and he also did not appeal those decisions to the Supreme Court of Ohio. He later sought reconsideration under App. R. 26(A) (*id.* at pp. 274-79, 345), which the court denied as untimely in November 2022 (ECF Doc. 23), and he did not timely appeal that decision to the Supreme Court of Ohio. When Mr. McCloud ultimately filed his notice of appeal and memorandum in support of jurisdiction with the Supreme Court of Ohio in June 2023, he did not appeal any of the above decisions; instead, he appealed the state court's decision on his separate appeal of the denial of his post-conviction Motion to Compel. (*See id.* at pp. 288, 289-308.)[6] That appeal to the Supreme Court of Ohio thus did not timely exhaust or otherwise preserve Mr. McCloud's claim on direct appeal or those he sought to raise through his Rule 26(B) applications.

Mr. McCloud's reference to *Jimenez v. Quarterman*, 555 U.S. 113 (2009), does not change this analysis. (*See* ECF Doc. 21, pp. 6, 8.) The Supreme Court held in *Jimenez* that a state court order that reopened direct review of a conviction "restore[d] the pendency of the direct appeal," so that the conviction did not become final for purposes of AEDPA's statute of limitations until the conclusion of proceedings on the reopened appeal. *See* 555 U.S. at 120.

---

[6] Although the content of Mr. McCloud's memorandum to the Supreme Court of Ohio referenced subject matter similar to his App. R. 26(B) filings, he used the case number for his appeal of the denial of his post-conviction Motion to Compel, not the case number for his direct appeal and related App. R. 26(A) and 26(B) applications. (ECF Doc. 18-1, pp. 289-308.) The appeal was also timely only as to the appellate court's decision on his Motion to Compel, for which the state court denied reconsideration on May 15, 2023 (*id.* at p. 288) but would not have been timely as to any of the state court denials of his direct appeal or App. R. 26(B) applications.

That precedent is inapplicable here, where the state court of appeals denied Mr. McCloud's requests to reopen his direct appeal as untimely and successive.

For the reasons set forth above, the undersigned finds Mr. McCloud has failed to show that the state court extended the date his conviction became final by reopening his direct appeal. Since he did not file his Petition until July 18, 2024, over ten years after the expiration of the statute of limitations, his Petition is time-barred unless the statute of limitations was tolled. The undersigned therefore turns to the question of tolling.

### 2. Statutory Tolling Does Not Apply

Under § 2244(d)(2), the statute of limitations is tolled for as long as a properly filed application for post-conviction relief or other collateral review is pending in the state courts. *See Jurado*, 337 F.3d at 640. But this statutory tolling provision does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman*, 346 F.3d at 602 (internal quotations and citation omitted). Since Mr. McCloud did not file his first Rule 26(B) Application until July 18, 2018, over four years after the statute of limitations expired (ECF Doc. 18-1, p. 224), the request for relief could "no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602. The same is true of his second Rule 26(B) Application and his Motion to Compel, which were both filed in 2022. (*See* ECF Doc. 18-1, pp. 243, 268.) Thus, statutory tolling does not apply.

### 3. Equitable Tolling Does Not Apply

Equitable tolling of the statute of limitations is available where a petitioner can show that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented timely filing," *Holland*, 560 U.S. at 649, or where he can demonstrate actual innocence though the introduction of new reliable evidence that was not presented at trial,

*Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386 and *Schlup*, 513 U.S. at 324).  Mr. McCloud has failed to show that he is entitled to equitable tolling under either of these standards.

### i.  Traditional Equitable Tolling

Respondent argues that Mr. McCloud is not entitled to traditional equitable tolling because he "has been dilatory, rather than diligent, in pursuit of his claims before this federal habeas Court," taking no action for five years after the state court of appeals denied his direct appeal.  (ECF Doc. 7, p. 12.)  Mr. McCloud asserts that the ineffective assistance of his appellate counsel on direct appeal prevented him from timely filing his habeas petition.  (ECF Doc. 21, pp. 2-3, 9.)  Specifically, he claims that his attorney did not communicate with him about his direct appeal, filed a direct appeal without his knowledge or input, and did not inform him when that appeal was denied.  (*Id*. at pp. 2-3.)  In support, he submits a copy of a letter from his attorney, dated May 15, 2014, where the attorney wrote:

> Mr. McCloud I received a letter from your mother regarding your appeal.
>
> I was behind schedule[.]  I must apologize if I did not inform you[.]  I have been very busy, I assumed I answered your letter[.]  I had your file mixed up with another case.
>
> I did not get your input on what assignments of error as I assumed I did.
>
> Due to your file being misplaced however I did file errors I thought was in your best interest.  As of this date you are over due, and I [*illegible*]nger assigned to represent you.  However I will relay the information to another attorney.

(ECF Doc. 21-2, p. 3; *see* ECF Doc. 18-1, p. 280.)  Mr. McCloud asserts that he did not receive this letter until 2015.  (ECF Doc. 21, p. 2.)  Based on the letter, he says he believed his former attorney "would provide him with another lawyer who would [f]ile all future motions pro bono." (*Id*. at p. 3.)  But when he did not hear from another lawyer, he "decided to file a delayed application to reopen (direct appeal)" two-and-a-half years after receiving the above letter from his former attorney.  (*Id*.)

Indeed, the record reflects that Mr. McCloud filed his first pro se application to reopen his direct appeal in July 2018, over two years after reportedly receiving the above letter from his attorney.  (ECF Doc. 18-1, pp. 224-29.)  The court of appeals denied the application as untimely, finding "more than five years have elapsed since the journalization of the appellate judgment in this matter" and that Petitioner had failed to show "good cause" for the late filing.  (*Id.* at pp. 241-42.)  Respondent argues that Mr. McCloud's "own admission" that several years lapsed between his receipt of the letter from his attorney in 2015 and his next filing in 2018 serve as an example of how he "has shown a lack of diligence and undue delay in pursuing his state case." (ECF Doc. 24, p. 5.)

Even if this Court assumes based on the above letter that deficient representation by Mr. McCloud's appellate counsel rose to the level of an "extraordinary circumstance" that "stood in his way and prevented timely filing" of the claims now asserted in the Petition, the Court must also find that Mr. McCloud "pursu[ed] his rights diligently" once he became aware of that deficient representation.  *See Holland*, 560 U.S. at 649.  Here, Mr. McCloud claims he received the above letter in 2015 but acknowledges that he did not file his first Rule 26(B) application alleging ineffective assistance of counsel until July 10, 2018.  (ECF Doc. 21, pp. 2-3; ECF Doc. 18-1, p. 224.)  When that application was denied, Mr. McCloud did not appeal the denial to the Supreme Court and then waited another four years, until 2022, to make a second attempt to reopen his direct appeal.  (ECF Doc. 18-1, pp. 243-58.)  He then waited until 2024 to file the present Petition, over ten years after the AEDPA statute of limitations expired, nine years after he says he received the above letter from his attorney, and six years after the denial of his first Rule 26(B) application.  Based on this record, the undersigned concludes that Mr. McCloud has failed to show that he was "pursuing his rights diligently." *Holland*, 560 U.S. at 649.

22

Mr. McCloud's assertion that he "was under the impression [his former attorney] would provide him with another lawyer who would file all future motions pro bono" (ECF Doc. 21, pp. 2-3) does not change this analysis.  First, his former attorney's statement in the 2014 letter that he would "relay [Mr. McCloud's] information to another lawyer" (ECF Doc. 21-2, p. 3) does not reasonably support a conclusion that the lawyer had promised to personally arrange for another lawyer to represent Mr. McCloud pro bono.  And second, Mr. McCloud's admission that he waited over two years to hear from that anticipated pro bono attorney before taking independent action to reopen his direct appeal (ECF Doc. 21, p. 3) clearly demonstrates a lack of diligence.

Mr. McCloud's additional assertions that he "suffer[]s from documented mental illness" and doesn't know how the law works (*id.*) also do not change the analysis.  Neither his pro se status nor his lack of knowledge of the law are sufficient to excuse late filing.  *See Keeling*, 673 F.3d at 464.  Further, "[a]lthough the mental incapacity of [a] petitioner can warrant the equitable tolling of the statute of limitations," the Sixth Circuit has explained that "mental incompetence is not a *per se* reason to toll a statute of limitations."  *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008).  To warrant equitable tolling, "the petitioner must make a threshold showing of incompetence and . . . demonstrate that the alleged incompetence affected h[is] ability to file a timely habeas petition."  *McSwain*, 287 F. App'x at 456 (citations omitted).  Here, as with the petitioner in *McSwain*, the record supports Mr. McCloud's assertion that he suffers from mental illness "but does not contain evidence to support a causal connection between h[is] mental illness and h[is] ability to file a timely federal habeas petition."  *Id.* at 457.  Although Mr. McCloud participated in competency proceedings in the underlying criminal case, he was found competent to stand trial and withdrew his insanity defense.  (ECF Doc. 18-1, pp. 18, 26, 70, 116.)  He also navigated the pro se filing of state court motions and applications, the instant Petition, and

several motions pending before this Court.  (*See, e.g., id.* at pp. 224, 243, 268.)  Although some

of his filings have been rejected based on timeliness, he has not made any specific showing that

it was his alleged mental illness that caused him to delay over two years between receiving the

letter from his former appellate attorney and seeking to reopen his direct appeal, or that it was his

mental illness that caused him to delay an additional six years before filing the Petition.

 For the reasons set forth above, the undersigned concludes that Mr. McCloud has not met

his burden to show that he "pursu[ed] his rights diligently" after an "extraordinary circumstance"

prevented the timely filing of the Petition.  *Holland*, 560 U.S. at 649; *see McClendon v.

Sherman*, 329 F.3d 490, 495 (6th Cir. 2003) ("Because McClendon points to no diligent effort,

and because his eleven-month delay . . . was not reasonable given these circumstances, no

equitable tolling is available."); *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2001)

("Petitioner's inability to explain why he did not file his third petition until over two months

outside of the statute of limitations, more than fourteen months after his conviction was final,

suggests a lack of due diligence.").  Accordingly, the undersigned finds Mr. McCloud has not

met his burden to demonstrate that he is entitled to traditional equitable tolling.

  **ii.**  **Tolling Based on a Fundamental Miscarriage of Justice**

 A petitioner may also be entitled to equitable tolling if he "can credibly demonstrate

actual innocence."  *Hubbard*, 98 F.4th at 742 (citing *McQuiggin*, 569 U.S. at 386).  To do so, he

must present "new reliable evidence" that was not presented at trial, such as "'exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'"  *Id.* at 743

(quoting *Schlup*, 513 U.S. at 324).  Even if new reliable evidence is presented, this Court must

still consider the entire record in assessing whether a credible claim of actual innocence has been

made because "actual innocence means factual innocence, not mere legal insufficiency."  *Id.*

(citing *House*, 547 U.S. at 537 and *Bousley*, 523 U.S. at 623).  Ultimately, equitable tolling may

only be awarded under this exception in cases where "new evidence shows 'it is more likely than

not that no reasonable juror would have convicted [the petitioner].'"  *McQuiggin*, 569 U.S. at

395 (brackets in original) (quoting *Schlup*, 513 U.S. at 329).

     Although Mr. McCloud asserts broadly that he has "discovered 'newly discovered

evidence'" that "can prove [he] is actually innocent" (ECF Doc. 21, pp. 7, 9), he does not

identify or describe the new evidence, does not explain when that evidence was discovered and

why there was a delay in its discovery, and does not provide any information that may be used to

assess whether the new evidence is sufficient to show "it is more likely than not that no

reasonable juror would have convicted [the petitioner]."  *McQuiggin*, 569 U.S. at 395.

     Instead of providing information regarding his "newly discovered evidence," Mr.

McCloud argues that the trial transcripts will "prove the state did in fact present false dna

evidence to the trial court" and that certain evidence submitted at trial was inadmissible.  (ECF

Doc. 21, pp. 7, 10-14.)  Neither the evidence previously presented at trial nor the transcripts for

that trial are "new reliable evidence" that may be used to support tolling under this standard.  *See*

*Hubbard*, 98 F.4th at 743.

     Mr. McCloud's assertion that the Ohio Bureau of Criminal Identification & Investigation

"has a reputation for contaminating dna evidence" and submission of a 2011 newspaper article

regarding an internal review of the bureau's processing of DNA samples does not change this

analysis.  (ECF Doc. 21, p. 12; ECF Doc. 21-2.)  Even if the article were accepted as evidence

that some DNA samples in the bureau's possession may have been contaminated in or around

2011, no information or evidence has been submitted to indicate that such contamination

occurred in this case, nor has Mr. McCloud explained why he delayed until thirteen years after

the article's publication to raise the issue with the Court.  Further, even if the article did serve to "impeach[] the State's case against him," Mr. McCloud has nevertheless "fail[ed] to present evidence affirmatively demonstrating his actual innocence" as required for tolling based on the fundamental miscarriage of justice standard.  *Hubbard,* 98 F.4th at 738.  This is because "actual innocence means factual innocence, not mere legal insufficiency."  *Id.* at 743.

For the reasons set forth above, the undersigned concludes that Mr. McCloud has not met his burden to demonstrate that he is entitled to equitable tolling because he "can credibly demonstrate actual innocence."  *Hubbard*, 98 F.4th at 742.  The undersigned accordingly finds no grounds to apply equitable tolling to extend the statute of limitations beyond January 1, 2014, and concludes that Mr. McCloud's Petition is untimely under § 2244(d)(1)(A).

## VII.   Petitioner's Motion to Expand the Record

In December 2024, Petitioner filed a motion seeking to procure copies of trial transcripts and other evidence.  (ECF Doc. 14.)  The undersigned denied the motion as premature in January 2025, noting that Petitioner could move for appropriate relief if he still believed relevant state court records were not before the Court "following Respondent's filing of the Return of Writ and the state court record."  (ECF Doc. 17.)  Instead of filing a Return of Writ, Respondent filed the present Motion to Dismiss.  (ECF Doc. 18.)  Respondent filed a certified copy of the state court record in support of the Motion to Dismiss (*see* ECF Docs. 18-1 & 23) but did not file the trial transcripts, noting instead that the trial transcripts are available upon request (ECF Doc. 18, p. 4, n. 3).  Petitioner has not filed a renewed motion to expand the record, but requests in his responsive brief that the Court "expand the record to include" certain trial transcripts.  (ECF Doc. 21, p. 9.)

The undersigned finds that the present record is sufficient to show that the Petition is untimely and that statutory and equitable tolling are unavailable without the trial transcripts being filed.  Those transcripts cannot establish that the claims in the Petition were timely filed, that an extraordinary circumstance prevented timely filing, or that Mr. McCloud was diligent in pursuing his claims.  And even if the trial transcripts could be used to impeach the state's case against Mr. McCloud, they cannot supply "new reliable evidence" to support tolling based on a fundamental miscarriage of justice.  Accordingly, the undersigned **DENIES** Petitioner's request to expand the record to include certain trial transcripts.

### VIII.   Recommendation

For the reasons set forth above, the undersigned recommends that the Court **DENY** Petitioner's Motions for Summary Judgment (ECF Doc. 19) and a Stay (ECF Doc. 21), **GRANT** Respondent's Motion to Dismiss (ECF Doc. 18), and **DISMISS** the Petition as untimely.

DATE: June 30, 2025

/s/ Amanda M. Knapp
AMANDA M. KNAPP
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).